## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY FORTSON, | ) | CASE NO. 1:11-cv-00147 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| DONALD MORGAN, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Johnny Fortson ("Fortson"), challenges the constitutionality of his conviction in the case of *State v. Fortson*, Cuyahoga County Court of Common Pleas Case No. CR511654. Fortson, represented by counsel, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on January 21, 2011.  On May 27, 2011, Warden Donald Morgan ("Respondent") filed his Answer/Return of Writ.  (ECF No. 8.)  Fortson filed a Traverse on June 24, 2011.  (ECF No. 9.)  For reasons set forth in detail below, it is recommended that Fortson's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Fortson's conviction as follows:

[*P2]  In 2006 and 2007, defendant was employed as a relief corrections officer at Northeast Prerelease Center ("NPC"), a minimum security state prison facility for female offenders.  A relief officer is not assigned to a particular unit within the prison; rather, he or she is assigned to different areas as needed.  Defendant's job duties included checking the inmates' rooms every 30 minutes and recording these checks in a log book.

[*P3]  In November 2007, Melissa Cantoni, who is an institutional investigator for NPC, received an anonymous letter from an inmate that sparked both an administrative and a criminal investigation of defendant's conduct.  Per NPC's policy, Cantoni alerted the Ohio State Patrol, who assigned investigator Thomas Shevlin to work on the criminal investigation of defendant.

[*P4]  As part of the administrative investigation, Cantoni viewed six day's worth of footage from NPC's security cameras and compared defendant's whereabouts to the entries in his log book for the same period.  Cantoni found 98 entries in defendant's log book noting routine security checks that did not match up with defendant's whereabouts in the videos.  Cantoni also discovered that defendant spent unauthorized time in an inmate's room, bringing her coffee and dancing for her, which is against NPC's policy.

[*P5]  Cantoni interviewed defendant about these alleged infractions. Defendant denied any wrongdoing.  In February 2008, NPC placed defendant on administrative leave and ultimately terminated his employment.

[*P6]  Meanwhile, Shevlin conducted the criminal investigation, which is the subject of this appeal.  The investigation also stemmed from the anonymous letter, which alleged that defendant committed sexual offenses against an NPC inmate. Shevlin instructed Cantoni to review the paperwork of released inmates to see if there was any additional information that might be useful to the investigation.

[*P7]  As a result, Cantoni supplied Shevlin with the names of several former inmates. Shevlin began interviewing these women, some of whom provided him with the names of additional inmates who had information regarding defendant's sexual misconduct with various NPC inmates.  Overall, Shevlin interviewed 27 women and received 12 written statements.  Shevlin compiled a list of victims and turned it over to the prosecutor's office.

[*P8]  On June 13, 2008, defendant was charged with four counts of rape in violation of R.C. 2907.02(A)(2); four counts of sexual battery in violation of R.C. 2907.03(A)(6); and 12 counts of gross sexual imposition ("GSI") in violation of R.C. 2907.05(A)(1). The charges involved six victims who were all inmates at NPC at the time of the offenses.

-2-

[*P9]  On October 1, 2008, a jury found defendant guilty of three counts of rape, three counts of sexual battery, and three counts of GSI.  Defendant was found not guilty of one count of GSI and the remaining charges were dismissed.  On October 3, 2008, the court sentenced defendant to an aggregate of seven years in prison.

*State v. Fortson*, 2010-Ohio-2337, 2010 Ohio App. LEXIS 1916 at ¶¶2-9 (Ohio Ct. App., May 27, 2010).

## II.  Procedural History

### A.    Conviction

In May of 2008, a Cuyahoga County Grand Jury charged Fortson with four counts of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(2), four counts of sexual battery in violation of O.R.C. § 2907.03(A)(6), and twelve counts of gross sexual imposition in violation of O.R.C. § 2907.05(A)(1).  (ECF No. 8-1, Exh. 1.)  Upon the prosecution's motion, the trial court nolled one count of rape, one count of sexual battery, and eight counts of gross sexual imposition.  (ECF No. 8-1. Exh. 2.)  On October 1, 2008, a jury found Fortson guilty of three counts of rape, three counts of sexual battery, and three counts of gross sexual imposition.[1] (ECF No. 8-1, Exh. 3.)  On October 3, 2008, the trial court sentenced Fortson to an aggregate term of seven years incarceration.  (ECF No. 8-1, Exh. 4.)

### B.    Direct Appeal

On October 30, 2008, Fortson, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising twelve assignments of error:

---

[1]  Fortson was found not guilty of one count of gross sexual imposition – Count Ten in the original indictment.  (ECF No. 8-1, Exh. 3.)

-3-

1.  Defendant was denied due process of law when he was convicted for offenses of rape, sexual battery, gross sexual imposition on an indictment which failed to allege a culpable mental state.

2.  Defendant was denied due process of law when the indictments were amended by including names for the various Jane Does.

3.  Defendant was denied due process of law when the court failed to give an instruction concerning evidence of other alleged bad acts.

4.  Defendant was denied a fair trial by reason of the introduction of irrelevant and prejudicial testimony.

5.  Defendant was denied due process of law and a fair trial when defendant was cross-examined in a humiliating and totally improper manner.

6.  Defendant was denied due process of law when the court failed to include defendant's requested instruction on credibility of witnesses.

7.  Defendant was denied due process of law and a fair trial by reason of the conflicting and confusing jury instructions and references to totally irrelevant crimes.

8.  Defendant was denied due process of law when the court modified the definition of gross sexual imposition.

9.  Defendant was denied due process of law when the court overruled his motions for judgment of acquittal.

10. Defendant was denied due process of law when the court failed to merge the counts of rape and sexual battery.

11. Defendant was denied due process of law when the court sentenced defendant without any consideration of the statutory criteria.

12. Defendant was denied due process of law when the court fined defendant after defendant had been declared indigent.

(ECF No. 8-1, Exhs. 5 & 6.)

On May 27, 2010, in a split opinion, the state appellate court "affirmed in part and reversed and modified in part.  [The state appellate court] merge[d] defendant's sexual battery

-4-

convictions into his rape convictions and vacate[d] the separate but concurrent one-year sentences imposed on the sexual battery charges." *State v. Fortson*, 2010 Ohio App. LEXIS 1916, 2010-Ohio-2337 at ¶111 (Ohio Ct. App., May 27, 2010).  Fortson's sentence was not changed.  *Id.*

On June 7, 2010, Fortson filed a motion for reconsideration, which was denied on July 1, 2010.  (ECF No. 8-1, Exhs. 12 & 14.)

On August 30, 2010, Fortson, represented by counsel, filed a Notice of Appeal with the Supreme Court of Ohio, raising ten propositions of law:

I.   A defendant hs (sic) been denied due process of law when he was convicted of rape, sexual battery and gross sexual imposition on an indictments which failed to allege a culpable mental state.

II.   A defendant has been denied due process of law where indictments are amended to include names for the various Jane Does.

III.   A defendant has been denied due process of law and a fair trial when the court fails to give an instruction concerning evidence of other alleged bad acts.

IV.   A defendant has been denied a fair trial where the court allows introduction of irrelevant and prejudicial testimony.

V.   A defendant has been denied due process of law and fair trial when the defendant, who has testified, is allowed to be cross-examined in a humiliating and totally improper manner.

VI.   A defendant has been denied due process of law when the court fails to include a requested instruction on the credibility of witnesses.

VII.   A defendant has been denied due process of law and a fair trial where the court gives conflicting and confusing jury instructions referencing totally unrelated offenses.

VIII. A defendant has been denied due process of law when the court omits an element of gross sexual imposition.

-5-

IX.   A defendant has been denied due process of law when the court overrules a motion for judgment of acquittal where there is insufficient evidence to prove guilt beyond a reasonable doubt.

X.   A defendant has been denied due process of law when the court fines the defendant after the defendant has been declared indigent.

(ECF No. 8-1, Exhs. 9 & 10.)

On December 1, 2010, the appeal was dismissed as not involving any substantial constitutional question.  (ECF No. 8-1, Exh. 11.)

## C.   Application to Reopen Appeal

On August 24, 2010, Fortson, *pro se*, filed a motion to reopen his appeal pursuant to Ohio Appl. R. 26(B) raising the following claims of ineffective assistance of trial counsel:

1.   The trial counsel was ineffective for failing to give written instruction on the credibility of witnesses.

2.   The trial counsel fail[ed] to request a jury instruction.

3.   The trial counsel['s] failure to investigate and to properly prepare.

4.   The trial counsel['s] failure to present substantial evidence during the cross examination.  Of the NPC institutions standards of procedures that were enforced.

5.   The trial counsel was ineffective for failing to file motion to suppress.

6.   The trial counsel was ineffective when he fail[ed] to present vital information during trial.

7.   Trial counsel['s] failure to subpoena the employees at the NPC Institution.

8.   The trial counsel failed to uphold his agreement to take the Jury to the NPC Institution.

9.   The trial counsel[']s negative actions during the closing arguments and during the time the defendant was sentenced.

(ECF No. 8-1, Exh. 18.)

On February 15, 2011, Fortson's application to reopen was denied.  (ECF No. 8-1, Exh. 20.)

**D.    Federal Habeas Petition**

On January 21, 2011, Fortson filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

GROUND ONE: Petitioner was denied due process of law when he was convicted of rape, sexual battery and gross sexual imposition based on an indictment which failed to allege any culpable mental state.

GROUND TWO: Petitioner was denied due process of law when the indictment did not contain the name of any victim but were only included at the close of the state's case after various witnesses were offered against petitioner. Petitioner was unable to determine who the alleged victims were until after the case was presented.

GROUND THREE: Petitioner was denied due process of law and a fair trial when the court failed to give any instruction concerning any other alleged bad acts. Moreover, the court allowed introduction of irrelevant and inflammatory and prejudicial testimony.

GROUND FOUR: Petitioner testified in [sic] his own behalf. However on cross-examination the court permitted a cross-examination of petitioner in a humiliating and totally improper manner.

GROUND FIVE: Petitioner was denied due process of law when the court failed to include a requested instruction on the credibility of witnesses and the court gave a jury instruction which contained conflicting and confusing instructions and referenced totally unrelated offenses.

GROUND SIX: Petitioner was denied due process of law when the court omitted to inform the jury of an essential element of the offense of gross sexual imposition.

GROUND SEVEN: Petitioner was denied due process of law when he was convicted where there was insufficient evidence to permit a rational factfinder to return a verdict of guilty.

GROUND EIGHT: Petitioner was denied due process of law and equal protection of the law when the court issued a fine and after the court had declared petitioner

-7-

to be indigent.

(ECF No. 1.)

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the

highest court in the state in which the petitioner was convicted has been given a full and fair

opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th

Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered

moot:  "If no remedy exists, and the substance of a claim has not been presented to the state

courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and

prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17

F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

If, due to petitioner's failure to comply with the procedural rule, the state court declines to

reach the merits of the issue, and the state procedural rule is an independent and adequate

grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue

_____

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a
claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides
(1) whether the petitioner failed to comply with an applicable state procedural rule,
(2) whether the state courts actually enforced the state procedural sanction, (3) whether
the state procedural bar is an "independent and adequate" state ground on which the state
can foreclose federal review, and (4) whether the petitioner has demonstrated "cause"
and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

-8-

that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"

-10-

also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Grounds One and Two: Alleged Defects in the Indictment**

In ground one, Fortson argues that he was denied due process of law when the indictment failed to allege a culpable mental state.  (ECF No. 9 at 2-4.)  In ground two, Fortson asserts that the indictment failed to identify the victims by name; and, that the victims were not identified until the close of the State's case against him.  (ECF No. 9 at 5-9.)  Respondent contends that neither of these grounds are cognizable upon federal habeas review.  (ECF No. 8 at 12, 14.)

Furthermore, Respondent asserts that these grounds are procedurally defaulted as Fortson did not fairly present them to the state courts. *Id.*

First, it is well settled that the federal guarantee of a grand jury indictment does not apply to the states. *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Branzburg v. Hayes*, 408 U.S. 665 (1972)); *accord Riffel v. Erwin*, 2005 U.S. Dist. LEXIS 11666 (S.D. Ohio 2005). In addition, "the Constitution does not require any particular state indictment rule ... [or] an indictment at all if sufficient notice of the charges is given in some other manner." *Id.* (*citing Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) *cert. denied*, 425 U.S. 954 (1976)). Nevertheless, the Due Process Clause of the Fourteenth Amendment requires that a state must give a criminal defendant "fair notice" of the charges against him to permit adequate preparation of his defense. *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Koontz*, 731 F.2d at 369; *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977). The fair notice requirement is met when a charged offense "[is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Id.* "To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). The United States Supreme Court has held as follows:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Carll*, 105 U.S. 611, 612 (1882). "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with

such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483, 487 (1888).

*Hamling v. United States*, 418 U.S. 87, 117-118 (1974); *accord United States v. McAuliffe*, 490 F.3d 526, 530 (6ᵗʰ Cir. 2007); *United States v. Jackson*, 327 F.3d 273, 290 (4ᵗʰ Cir. 2003).

A petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6ᵗʰ Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *Maupin v. Smith*, 785 F.2d 135, 138 (6ᵗʰ Cir. 1986).  Fortson did not fairly present ground one of his petition to the state courts as a distinct *federal* constitutional claim.  A claim is adequately raised on direct appeal if it was "fairly presented" to the state court.  To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6ᵗʰ Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6ᵗʰ Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon  federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6ᵗʰ Cir. 2003).

On direct appeal, Fortson alleged that he was "denied due process of law" because the indictment failed to allege a culpable mental state.  (ECF No. 8-1, Exh. 6.)  As to ground one,

-13-

Fortson did not rely upon federal cases employing federal constitutional analysis or allege facts well within the mainstream of constitutional law.  (ECF No. 8-1, Exh. 6 at 10-11.)  While it is undisputed that Fortson's only citation in his appellate brief was to a state case – *State v. Colon*, 885 N.E.2d 917, 118 Ohio St.3d 26 (Ohio 2008) – Fortson asserts that the *Colon* court employed a federal constitutional analysis.  (ECF No. 9 at 3.)  This Court disagrees.  While the *Colon* decision draws parallels between the constitutional right to a grand jury indictment in federal criminal proceedings and the state right to a grand jury indictment as provided for in the Ohio constitution, the *Colon* decision was firmly rooted in *state* law.

Finally, although Fortson alleged in his appellate brief that he was denied "due process of law," this alone is insufficient.  "To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments."  *Blackmon v. Booker*, 394 F.3d 399, 400-401 (6th Cir. 2004).  In *Blackmon*, the Sixth Circuit found that a petitioner's "naked assertion" in his brief headings and conclusions that his rights to a fair trial and due process were violated was insufficient to constitute fair presentment where the petitioner "failed to develop any cogent arguments regarding those rights beyond the naked assertion that they were violated."  *Id.*; *accord Logan v. Miller*, 2011 U.S. Dist. LEXIS 48859 at *12 (N.D. Ohio Mar. 29, 2011); *see also Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.")

-14-

Therefore, ground one was not fairly presented and is procedurally defaulted.[3]

Furthermore, even if the Court were to consider ground one as having been fairly presented, it simply fails to raise a cognizable claim.  Although the State of Ohio may require indictment by a grand jury pursuant to its own constitution, any violation of such right is a matter of state law.  The U.S. Supreme Court has stated many times that "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  To be entitled to relief in federal habeas corpus, a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution.  *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  Therefore, even if Ohio requires indictment by a grand jury similar to the federal constitutional right in *federal* criminal prosecutions, the violation of the state right to a grand jury indictment in Ohio, and all the procedural safeguards appurtenant thereto, does not transform the *state* right into a *federal* constitutional right.

Moreover, even if Fortson's claim is deemed cognizable, an indictment gives fair notice of the offense where its sets out all elements of the charges.  The state appellate court found that the indictments adequately included the *mens rea* element, because the indictments alleged the acts

-------------------

[3] Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763 (*citing Wainwright*, 433 U.S. at 87.)  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Here, Fortson has failed to present any cause for his default or alleged a manifest miscarriage of justice.

were done "purposely" with respect to the rape and gross sexual imposition charges.[4]  *Fortson*,

2010-Ohio-2337 at ¶¶13-15.   This Court's own review of the indictment confirms that

"purposely" was indeed included in the charging documents.  (ECF No. 8-1, Exh. 4.)  Thus, the

state appellate court's determination – that the indictments gave fair notice regrading the *men rea*

of the crimes of which Fortson was charged and convicted – was not unreasonable.[5]

As to ground two, the Court finds that it was fairly presented.  Fortson's state appellate

brief does employ a federal constitutional analysis.  While state law arguments predominate, his

brief can be interpreted as alleging that the amendment of the indictment after the close of the

State's case deprived him of adequate notice of the charges.  With respect to ground two, the

state appellate court found as follows:

> [*P17]  II.  Defendant was denied due process of law when the indictments were
> amended by including names for various Jane Does.
>
> [*P18]  Defendant was indicted for crimes against "Jane Doe I" through "Jane
> Doe VI."  At the close of the State's case, the court amended the indictment to
> replace each "Jane Doe" with a victim's name.  Defendant objected on grounds
> that the State failed to present evidence linking each particular victim to a "Jane
> Doe."
>
> [*P19]  Crim.R. 7(D) states in pertinent part that the "court may at any time
> before, during, or after a trial amend the indictment * * * in respect to any * * *
> omission * * * provided no change is made in the name or identity of the crime
> charged."  In *State v. Henley*, Cuyahoga App. No. 86591, 2006 Ohio 2728, this

---

[4]  Pursuant to O.R.C. § 2901.22(A), "A person acts purposely when it is his specific
intention to cause a certain result, or, when the gist of the offense is a prohibition against
conduct of a certain nature, regardless of what the offender intends to accomplish
thereby, it is his specific intention to engage in conduct of that nature."

[5] The state appellate court also found that sexual battery is a strict liability offense and,
therefore, no *mens rea* is necessary.  *Fortson*, 2010-Ohio-2337 at ¶13.  This finding is
not unreasonable, though the issue is moot as Fortson's sexual battery convictions were
merged with his convictions for rape.  *Id*. at ¶92.

> Court held that "[i]t is well settled that an amendment to an indictment which changes the name of the victim changes neither the substance nor the identity of the crime charged." See, also, *State v. Mitchell*, Cuyahoga App. No. 88977, 2007 Ohio 6190; *State v. Valenzona*, Cuyahoga App. No. 89099, 2007 Ohio 6892.

> [*P20]  Accordingly, Assignment of Error II is overruled.

*Fortson*, 2010-Ohio-2337 at ¶¶17-20.

While the state appellate court addressed the crux of Fortson's claims, which were predominantly based on state law, it did not address the issue of whether the amendment of the indictment after the prosecution rested violated his right to fair notice of the charges against him. "[B]ecause the state courts never addressed the merits of petitioner's claim, this Court conducts a *de novo* review." *Mickens v. Moore*, 2008 U.S. Dist. LEXIS 29156 (S.D. Ohio Apr. 9, 2008), *citing Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir.2005), *citing Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir.2003).

Fortson relies on *United States v. Ford*, 872 F.2d 1231 (6th Cir. 1989) and *United States v. Tsinhnahijinnie*, 112 F.3d 988 (9th Cir. 1997) to support his argument that the changes to the indictment at trial violated his constitutional rights.  In *Ford*, the Court observed that "[a]n amendment is considered per se prejudicial and warrants reversal of a conviction, whereas a variance is not reversible error unless the accused has proved a prejudicial effect upon his defense."  872 N.E.2d at 1235 (*citing United States v. Hathaway*, 798 F.2d 902, 910-11 (6th Cir. 1986)).  The Court explained that:

> An amendment is considered per se prejudicial because it effects a direct infringement upon the fifth amendment guarantee that 'no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . .'  When the charging terms of an indictment are effectively altered, the accused is held answerable for a charge not levied through the protective device of a grand jury.  A variance, however, does not undercut the charging terms of an indictment but merely permits the proof of facts to establish

-17-

> the criminal charge materially different from the facts contained in the indictment. In this manner a variance does not violate the fifth amendment grand jury guarantee but instead infringes upon the 'apprisal function' of the sixth amendment which requires that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . .' J. Moore, Moore's Federal Practice para. 7.05[1] (1988).

*Ford*, 872 F.2d at 1235. Thus, the *Ford* court found that a district judge's instruction to the jury, which constructively amended and enlarged the possession of a firearm charge to any date over a period of approximately eleven months, required reversal. Fortson, without any explanation, appears to assert that his situation is analogous. The Court, however, does not believe changing the dates on which an offense is alleged to have been committed is akin to supplying the jury with the actual names of the Jane Doe victims. Fortson has not cited any clearly established Supreme Court precedent that suggests the action taken by the trial court with respect to the victims' identities herein was improper.

Furthermore, while Fortson appears to allege that the identity of the Jane Doe victims referenced in the indictments were not disclosed *to him* prior to trial, thereby depriving him of an opportunity to adequately prepare a defense, the record is simply devoid of any facts that support this assertion. Both Fortson and Respondent were ordered to submit supplemental briefs on this issue. (ECF No. 10.) Instead Fortson's brief simply avers that the names of the victims/witnesses were not identified *to the jury* prior to the close of the State's case. (ECF No. 11.) The claim that Fortson or his counsel did not know the identity of the victims in advance of trial is not supported by the record. The trial court, at the close of the State's case, remarked that:

> Before you [defense counsel] start, just for lack of confusion, we'll have the state list *I know everybody has got them already*, but list the name of the victim for the formal amendment of the indictment, of the Jane Doe 1, 2, et cetera. Then that

will eliminate the confusion for the future reader of the record.

(ECF No. 12-1, Tr. 446) (emphasis added).

When Fortson's counsel moved to dismiss the counts against Fortson for failure to specify the names of the Jane Doe victims, the trial court remarked that Fortson's counsel "knew who they were referring to as Jane Doe Number 1.  We could have put this on the record earlier at the start of the trial, if you wanted."  (Tr. 451.)  When the trial court specifically inquired whether defense counsel was surprised or did not know the identity of Jane Doe Number 1, defense counsel essentially admitted that he knew by responding, "The fact that I know it is irrelevant." (Tr. 452.)  Because Fortson's counsel was clearly aware of the identity of the individual victims in the indictment, Fortson was not deprived fair notice of the charges against him.  Also, with respect to the requirement that an indictment be sufficiently specific to enable a defendant to plead double jeopardy in the event of an acquittal, the Court fails to see how the substitution of the victim names for their Jane Doe designations before the jury charge would compromise this right.

As such, ground two is not well taken.

## B.  Ground Three: Evidence of Bad Acts

In ground three, Fortson asserts that he was deprived of a fundamentally fair trial when the state court admitted evidence of other bad acts without giving limiting instructions to the jury. (ECF No. 9 at 9.)  Specifically, Fortson objects to the testimony of Cassidy Walker, Jamie Wagner, Richelle Lacy, and Ericajoi Johnson – none of whom were identified as victims in the charges Fortson faced.[6]  (ECF No. 9 at 10-11.)  A large portion of the argument attempts to show

---

[6]  All four witnesses testified to incidents of a sexual nature.

-19-

that the admission of this evidence violated Ohio Rule of Evidence 404(B), and that the state appellate court's ruling conflicted with the decisions of other state appellate courts.  Such an argument is unavailing, as habeas corpus relief is unavailable for violations of state law.

The United States Supreme Court has stated many times that "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.  *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  To be entitled to relief in federal habeas corpus a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution.  *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  As a general rule, an error of state law in the admissibility of evidence does not constitute such a denial and is not cognizable in habeas corpus.  *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001).  Under the AEDPA, the states have wide latitude in ruling on evidentiary matters.  *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001).  In considering a habeas corpus petition a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United States Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846 (6th Cir. 2000).

The state appellate court, in addressing Fortson's claim, found no error in the admission of

-20-

the evidence in issue.  *Fortso*n, 2010-Ohio-2337 at ¶¶31-38.  The court found that such evidence

was admissible to show that Fortson had the opportunity to commit the charged crimes and that

he displayed an idiosyncratic pattern of conduct.  *Id.*  The state appellate court did not address

Fortson's federal constitutional due process claim.  When an evidentiary ruling is so egregious

that it results in a denial of fundamental fairness, it may violate due process and thus warrant

habeas relief.  *Coleman*, 244 F.3d at 542; *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

Nonetheless, "courts 'have defined the category of infractions that violate 'fundamental fairness'

very narrowly.'"  *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (*quoting Dowling v.*

*United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)).  "Generally,

state-court evidentiary rulings cannot rise to the level of due process violations unless they

'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to

be ranked as fundamental.'"  *Seymou*r, 224 F.3d at 552 (*quoting Montana v. Egelhoff*, 518 U.S.

37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)).

    In *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), the Sixth Circuit addressed a similar

argument where the claimant asserted that certain evidence was so prejudicial that "it poisoned

the trial and violated [his] right to a fundamentally fair trial," because it served only to

demonstrate that he was a "bad man."  The *Bugh* court held that "the admission of prior bad acts

evidence was not contrary to clearly established Supreme Court precedent.  There is no clearly

established Supreme Court precedent which holds that a state violates due process by permitting

propensity evidence in the form of other bad acts evidence."[7]  *Id.* at 512; *accord Paige v.*

---

[7] Notably, the *Bugh* court was also confronted with a situation where the state court did
not address the federal issue.

-21-

*Bradshaw*, 2007 U.S. Dist. LEXIS 93324 (N.D. Ohio Apr. 4, 2007) (containing a lengthy discussion of the common law roots of the rule against the admission of propensity evidence, but ultimately finding that federal habeas courts cannot find that state court rulings allowing propensity or other acts evidence are contrary to, or involve an objectively unreasonable application of, clearly established federal law.)  In *Estelle*, 502 U.S. 62, 75 (1991), the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  The *Estelle* Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id*. at 75 n. 5, 112 S.Ct. 475.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see *Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

Absent any clearly established Supreme Court precedent to the contrary, this Court cannot find that Fortson was denied a fundamentally fair trial due to the admission of the challenged evidence.

**C.     Ground Four: Improper Cross-Examination**

In ground four of the petition, Fortson alleges that he was cross-examined in an improper and humiliating manner, thereby undermining his right to testify on his own behalf.  (ECF No. 9 at 15-19.)  Specifically, Fortson asserts it was improper for the prosecution to ask him whether the witnesses against him were telling the truth or why they might have reason to dislike him. (Tr. 479-83.)

The cases cited by Fortson simply do not stand for the proposition that the State's line of

questioning violated his federal constitutional right to testify on his own behalf. *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620 (1944) (addressing whether summary judgment was properly granted in a civil matter); *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) (finding that expert witnesses may not offer their opinions on their personal assessment of the credibility of another witness's testimony); *United States v. Richter*, 826 F.2d 206, 208-09 (2d Cir. 1987) (observing that prosecutorial cross-examination which compels a defendant to state that law enforcement officers lied in their testimony is improper, but finding a new trial was necessary primarily because the prosecution mislead the jury in closing arguments by misstating the evidence and the law).

To the extent Fortson attempted to raise a prosecutorial misconduct claim, it is also meritless. To constitute a constitutional violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974). The Sixth Circuit has stated that a court should perform a two-step test to determine whether a prosecutor's inappropriate statements warrant a reversal. *See United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994). First, a court must determine whether the prosecutor's statements were improper followed by a second determination as to whether the impropriety constitutes reversible error. *DeJohn*, 368 F.3d at 548. The following four factors are used to determine whether reversal is necessary: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.*, *quoting Carroll*, 26 F.3d at 1385. Further, prosecutorial misconduct

-23-

claims are subject to harmless error analysis. *See Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2006). ("An error is found to be harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'") (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

First, it bears noting that the challenged line of questioning was largely spurred by Fortson's response when asked whether Gail Black had anything against him.  (Tr. 478.) Fortson replied, "Well, she lied." *Id.*  Thus, it was Fortson who opted to assail the credibility of one of the victims and placed the testimony before the jury.  He continued his impeachment of the other witnesses as well.  When asked whether he recalled a specific portion of Jamie Wagner's testimony, Fortson replied that her testimony was a lie.  (Tr. 479.)  Even assuming for the sake of argument that the prosecutor's line of questioning was improper, the Court finds that any impropriety was harmless.  Fortson's conviction was dependent upon the jury's determination that the prosecution witnesses' testimony was credible while Fortson's was not. The prosecution's questioning essentially asked Fortson whether he had an explanation for the discrepancy between his testimony and that of the victims.  The Court does not believe such questioning had a substantial and injurious effect or influence in determining the jury's verdict.

**D.    Grounds Five and Six: Jury Instructions**

In ground five of the petition, Fortson asserts that the he was denied due process of law when the trial court failed to give a requested instruction regarding the credibility of witnesses. (ECF No. 9 at 19-23.)  In ground six, Fortson contends that he was denied due process because the trial court's jury charge concerning the offense of gross sexual imposition omitted an essential element of the crime.  (ECF No. 9 at 23.)  Specifically, Fortson contends that the trial

-24-

court did not instruct that sexual contact must be made "for the purpose of sexually arousing or gratifying either person."[8]  *Id.*

With respect to ground six, the state appellate court addressed Fortson's argument as follows:

> [*P67]  Specifically, defendant argues that the court omitted an essential element of GSI when it improperly defined "sexual contact" in its instructions to the jury. A cursory review of the transcript shows that the court defined "sexual contact" as follows to the jury: "Sexual contact means any touching of an erogenous zone of another, including, without limitation, the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  This definition mirrors, verbatim, the statutory definition of "sexual contact" found in R.C. 2907.01(B), which is the statute that defines terms associated with sex offenses.

*Fortson*, 2010-Ohio-2337 at ¶67.  This Court's own review of the transcript confirms that such an instruction was indeed given.  (Tr. 572.)  As such, ground six is without merit.[9]

With respect to ground five, the state appellate court addressed Fortson's argument as follows:

> [*P49]  "VI. Defendant was denied due process of law when the court failed to include defendant's requested instruction on credibility of witnesses."
>
> [*P50]  Specifically, defendant argues that the court erred when it rejected the following proposed jury instruction, which he submitted to the court after the jury began deliberating:
>
> [*P51]  "You have been shown a number of State's witnesses were convicted

---

[8]  Pursuant to O.R.C. § 2907.01(B) "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

[9]  The Court is perplexed by counsel's inclusion of this factually inaccurate argument, especially in light of the state appellate court specifically pointing out that the allegedly omitted instruction was actually given.

felons, some for crimes of violence, or for serious drug offenses and other crimes. A conviction is a factor you may consider in deciding whether to believe any witness, but it does not necessarily destroy the witness's credibility.  It has been brought to your attention only because you may wish to consider it when you decide whether you believe the witness's testimony."

[*P52]  In *State v. Fulmer*, 117 Ohio St.3d 319, 2008 Ohio 936, 883 N.E.2d 1052, at P72, the Ohio Supreme Court held that "the trial judge is in the best position to gauge the evidence before the jury and is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." (Citing *State v. Wolons* (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443.)

[*P53]  When the subject of witness credibility is covered in the court's general charge to the jury, there is no need for a special instruction regarding the credibility of specific witnesses.  *State v. Group*, 98 Ohio St.3d 248, 2002 Ohio 7247, 781 N.E.2d 980, at ¶117.

[*P54]  The Group court further stated that even if a proposed instruction is not covered by the general charge to the jury, "a jury assessing the credibility of a witness is not likely to overlook the witness's record of prior convictions," and any such resulting error would be harmless. *Id*. at ¶119.

[*P55]  In the instant case, the court instructed the jury that they are the sole judges of witness credibility, and in making determinations, they should consider the witness's "interest or bias * * * in the outcome of the verdict, their appearance, manner, demeanor while testifying before you, their frankness or lack of frankness, or honesty and dishonesty, * * * their candor, or lack of candor, consistency of the witness's testimony with other known facts in the case, the accuracy or inaccuracy of memory, intelligence or lack of intelligence, their reasonableness or unreasonableness of what they testified to you, the opportunity the witness had to see or hear or know the truth and facts and circumstances concerning the things to which they testified.  That's a general thing, right? Think about it.  Whatever they've testified. And any other facts and circumstances surrounding testimony which, in your judgment, would add or detract from the credibility or weight to be given to the witness' testimony."

[*P56]  Additionally, when the court denied defendant's proposed jury instruction, it stated that it felt an instruction specifically regarding the credibility of witnesses with prior convictions was redundant and unnecessary.  The court concluded that it was an obvious and simple fact that many of the witnesses were current or former prisoners with criminal convictions. The court also noted that defense counsel spoke "expansively" about this issue, trying to "enhance and magnify it" during closing arguments. See Crim.R. 30(A).

[*P57]  After reviewing the record, we cannot say that the court abused its
discretion in rejecting defendant's additional instruction regarding the credibility
of witnesses with felony convictions.

*Fortson*, 2010-Ohio-2337 at ¶¶49-57.

Errors in jury instructions are generally not cognizable in federal habeas corpus unless they

deprive petitioner of a fundamentally fair trial.  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977);

*see also Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865,

868-69 (6th Cir. 1983).  In a criminal trial, the prosecution must prove every element of the

offense, and a jury instruction violates due process if it fails to give effect to that requirement.

*Middleton v. McNeil*, 541 U.S. 433, 437, 124 S.Ct. 1830 (2004); *see Sandstrom v. Montana*, 442

U.S. 510, 520-521, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).  Nonetheless, not every ambiguity,

inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  *Id.*

The question is "'whether the ailing instruction ... so infected the entire trial that the resulting

conviction violates due process.'"  *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116

L.Ed.2d 385 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d

368 (1973)).  "'[A] single instruction to a jury may not be judged in artificial isolation, but must

be viewed in the context of the overall charge.'"  *Boyde v. California*, 494 U.S. 370, 378, 110

S.Ct. 1190, 108 L.Ed.2d 316 (1990) (*quoting Cupp,* 414 at 146-147, 94 S.Ct. 396).  If the charge

as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury

has applied the challenged instruction in a way' that violates the Constitution."  *Estelle, supra*, at

72, 112 S.Ct. 475 (*quoting Boyde, supra*, at 380, 110 S.Ct. 1190).

Herein, the requested instruction had nothing to do with proving every element of an

offense.  The trial court, in its discretion, gave instructions concerning credibility.  Fortson was

not constitutionally entitled to have the court read the specific instruction he requested, and none of the case law cited by Fortson suggests as much.[10]  To the contrary, similar cases have rejected such a proposition.  *See, e.g., Young v. Trombley*, 435 Fed. App'x. 499, 503-504 (6th Cir. 2011) (finding that trial court's failure to give a specific jury instruction concerning accomplice credibility did not merit habeas relief where the trial court's extensive instructions on witness credibility, although not specifically aimed at accomplice testimony, were constitutionally adequate to protect the prisoner's right to a fair trial.); *Lopes v. Campbell*, 408 Fed. Appx. 13, 16-17 (9th Cir. 2010) ("because the trial court gave standard jury instructions regarding witness credibility, it was not objectively unreasonable for the state court to conclude that the trial court's refusal to give Lopes's requested perjury instruction 'so infected the entire trial that the resulting conviction violates due process.'").  In *Lemon v. Wolfe*, the Eastern District Court of Michigan addressed a similar argument.  2006 U.S. Dist. LEXIS 4713 (E.D. Mich. Feb. 8, 2006). Therein, the petitioner claimed error stemming from the trial court's failure to give an impeachment by prior conviction instruction.  *Id*. at *24.  The *Lemon* court found no constitutional error, explaining as follows:

> In the present case Petitioner asserts that the instructions given did not adequately guide the jury in its consideration of George Kitchen's admission regarding his previous conviction, nor its consideration of prior inconsistent statements made by Amy Valentine and George Kitchen during their preliminary examination testimony.  This is not a case were [sic] a challenged instruction added an

---

[10]  The cases cited by Fortson are all federal criminal cases that are based on the rules of federal criminal practice and are, therefore, inapplicable.  Moreover, even in *United States v. Zuniga*, 6 F.3d 569, 572 (9th Cir. 1993), the court observed that "[t]he trial court, however, is not required to give a particular instruction regarding the defense's theory of the case so long as the court's instructions adequately cover the subject.  If the instructions adequately cover the theory of the defense, there is no error."

-28-

additional element to the defendant's burden of establishing his defense as in *Barker v. Yukins*, 199 F.3d 867, 875-76 (6th Cir.1999) (failure to give required instruction that use of lethal force to resist an imminent rape would be lawful self-defense).  Nor is this a case where the challenged instructions could be reasonably construed as impermissibly shifting the burden of proof of an element of the crime to the defendant, *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), or could reasonably have resulted in requiring establishment of a higher degree of doubt than a reasonable doubt for acquittal. *See Cage v. Louisiana*, 498 U.S. 39, 41, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990).

In the present case, the jury instructions as given instructed the jury relative to the assessment of a witnesses' credibility. Moreover, Petitioner's trial counsel made an argument before the jury regarding George Kitchen's conviction and how that reflects upon his credibility. (Trial Transcript, dated 12/7/00). Therefore, the jury was instructed about prior convictions having an effect upon a witnesses' credibility. *** Accordingly, this Court concludes that Petitioner's claim that the trial court should have sua sponte given the above referenced jury instructions is without merit and that the jury instructions as given did not deprive him of a fair trial and does not entitle him to habeas relief.  Consequently, this claim is denied as an independent basis for habeas relief.

*Lemon*, 2006 U.S. Dist. LEXIS 4713 at **28-29.

The Court agrees with the above analysis and finds that this case is sufficiently analogous.[11] As noted by both the state appellate court and the trial court, it was patently obvious that all the victims who testified were inmates.  Fortson's counsel, in closing arguments, emphasized this fact repeatedly.  (Tr. 525-26, 529-33, 540-41.)  The trial court's actual credibility instruction did not impermissibly shift the burden to Fortson in any way.  As such it cannot reasonably be argued that Fortson was deprived of a fundamentally fair trial because the court did not include the requested jury charge.

**E.   Ground Seven: Sufficiency of the Evidence**

In ground seven of his habeas petition, Fortson asserts that there was insufficient evidence

---

[11] Defense counsel in *Lemon* did not request the relevant jury instruction.  This Court does not believe this distinction is material.

to support his convictions.  (ECF No. 1.)  Specifically, Fortson contends that the three rape convictions and three gross sexual imposition convictions should have been dismissed because there was no evidence of force or threat of force.  (ECF No. 9 at 24-25.)

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)  Furthermore, a federal habeas court considering a sufficiency of the evidence claim is "bound by two layers of deference to groups who might view facts differently than we would.  First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. ***  Second, even were we

-30-

to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 204-205 (6th Cir. 2009) (citations omitted).

The state appellate court addressed the evidence supporting Fortson's rape convictions as follows:

### Rape

[*P71]  Defendant was convicted of three counts of rape in violation of R.C. 2907.02(A)(2).  All three counts involved the same victim-inmate.  R.C. 2907.02(A)(2) defines rapes as follows: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

[*P72]  In the instant case, defendant argues that there was no evidence of force, which is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

[*P73]  The victim testified that on multiple occasions, she woke up in the morning to find defendant penetrating her vagina with this [sic] fingers, performing oral sex on her, and putting his exposed penis near her face and one time in her mouth.

[*P74]  This Court has consistently held that in situations "where the victim is sleeping and thus not aware of the defendant's intentions, only minimal force is necessary to facilitate the act" of rape.  *State v. Clark*, Cuyahoga App. No. 90148, 2008 Ohio 3358, at ¶17.  In *Clark*, the defendant was found guilty of forcible rape in violation of R.C. 2907.02(A)(2) when he inserted his finger in the victim's vagina, while she was sleeping, after moving the victim's nightgown and underwear.  *Id*. at ¶6.  See, also, *State v. Graves*, Cuyahoga App. No. 88845, 2007 Ohio 5430; *State v. Hooks*, Cuyahoga App. No. 88713, 2007 Ohio 5944, P50; *State v. Lillard* (May 23, 1996), Cuyahoga App. No. 69242, 1996 Ohio App. LEXIS 2150; *State v. Sullivan* (Oct. 7, 1993), Cuyahoga App. No. 63818, 1993 Ohio App. LEXIS 4859.

[*P75]  Although there was no evidence in the instant case that defendant removed or manipulated the rape victim's clothing while she was sleeping, we find that a rational trier of fact could have inferred that defendant must have used

> minimal force to facilitate sexual conduct with a sleeping inmate.  As this
> evidence is sufficient to prove rape, we find that the court properly denied
> defendant's Crim.R. 29 motion on these three charges.

*Fortson*, 2010-Ohio-2337 at ¶¶71-75.

Fortson does not challenge the accuracy of the state appellate court's rendition of the

evidence of record, but rather its determination as to what sort of evidence constitutes force

under Ohio law.  With respect to the rape convictions, Fortson asserts that testimony that he (1)

performed oral sex on the victim, (2) digitally penetrated the victim's vagina, and (3) placed his

penis in the victim's mouth – all while the victim was asleep – does not satisfy the force

requirement.  (ECF No. 9 at 24.)  The sole case upon which Fortson relies, *State v. Cohen*, is

inapplicable.  *Cohen*, 396 N.E.2d 235, 60 Ohio App. 2d 182 (Ohio Ct. App., 1978).  In *Cohen*,

the court was confronted with a theft case and not a crime of a sexual nature.  The state appellate

court identified a number of cases finding that, under Ohio law, perpetrating sexual acts on a

sleeping victim satisfies the force requirement.  As explained by one Ohio court:

> Appellate courts have found sufficient evidence of force even if the victim was
> asleep when the offense was committed.  For instance, in *State v. Sullivan* (Oct. 7,
> 1993), 8th Dist. No. 63818, 1993 Ohio App. LEXIS 4859, the sleeping victim
> awoke to find the defendant performing oral sex on her.  In finding the requisite
> element of force present, the Eighth District noted that "any" compulsion could
> establish force as defined in the statute, and observed that the evidence
> demonstrated that in committing the offense, the defendant had removed the
> victim's clothing and repositioned her body.  Similarly, in *State v. Lillard* (May
> 23, 1996), 8th App.No. 69242, 1996 Ohio App. LEXIS 2150, that court found the
> element of force present where the defendant "used physical exertion to position
> [the victim's] robe and legs."  And in *State v. Byrd*, 8th Dist. No. 82145, 2003
> Ohio 3958, P24, that same court affirmed a conviction for gross sexual imposition
> under R.C. 2907.05(A)(1) when the defendant waited until the girl had fallen
> asleep, sat next to her on the couch, placed her legs on his lap, and displaced her
> clothing.  These cases are all contrary to the case Bajaj cites in his brief for the
> proposition that rearranging someone's body is insufficient to prove force.  *See*
> *State v. Cohen* (1978), 60 Ohio App.2d 182, 396 N.E.2d 23, paragraph one of the
> syllabus.

*State v. Bajaj*, 2005-Ohio-2931 ¶17, 2005 Ohio App. LEXIS 2735 (Ohio Ct. App., June 8, 2005).

As Ohio law holds that the element of force or compulsion is satisfied where the victim is asleep, there was sufficient evidence to support Fortson's rape convictions.  Even if the court were to construe the *Cohen* case as being in conflict with the above cited authority rather than simply inapplicable to the facts of this case, it is not this Court's province to reconcile perceived conflicts in Ohio law.  *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state.")  Under such circumstances, this Court cannot find that the state appellate court's sufficiency determination with respect to the rape convictions was unreasonable.

Turning to the gross sexual imposition ("GSI") convictions, Fortson again argues that there was simply no evidence of force.  The state appellate court disagreed and found as follows:

[*P76] **GSI**

[*P77]  Defendant next argues that there was insufficient evidence to convict him of three counts of GSI against three different victims.

[*P78]  Gross sexual imposition is defined, in pertinent part, as follows: "No person shall have sexual contact with another * * * when * * * [t]he offender purposely compels the other person * * * to submit by force or threat of force." R.C. 2907.05(A)(1).  Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

[*P79]  Victim one testified that she awoke to defendant kissing her on the mouth and smelling "as though he had been giving someone else oral sex like right before that."  On another occasion, she awoke in her cell to find defendant touching her breasts.

[*P80]  The second victim testified that she was working as a porter in one of NPC's buildings when she had the following encounter with defendant: "I was in the porter closet preparing a mop bucket and he came in behind me and said, give me a kiss.  I turned around to see if I was hearing him correctly and he had put his

tongue in my mouth." She further testified that she was "shocked" that this happened and she did not report the incident because she "was scared [she would go to the hole."

[*P81] The third inmate testified about the following encounter she had with defendant: "He asked me to get a mop ready in the mop closet. So I was down there. CO says something, you better do it. So I went in there and got the mop, and I went to turn around and he pushed me in the closet and he stuck his tongue in my mouth. So I pushed him off me and I walked out of the B building. And after that it was just I was trying to avoid him at all costs."

[*P82] She further testified that defendant would "brush past me in the hallway and get his little cheap feels. * * * [T]here would be an ample opportunity to walk by and he would walk by and touch my breasts and slide by and stuff like that. * * * [H]e would just slide his hand across * * * my butt, trying to get a feel while he was doing it." This victim testified that defendant's hands came into contact with the private parts of her body, "whether it be the breasts or brushing past my vagina," approximately four to five times.

[*P83] All three inmates testified that they did not report defendant's conduct to NPC for fear of retaliation or other negative consequences. For example, one inmate testified as follows: "There's cameras, there's people. I didn't want to be related. I have too much time and too many years to be dealing with that. * * * First of all, the inmates would start talking out and then get to the staff, and then he would find out, and then his buddies would start treating me like crap. So it was better to keep your mouth shut." Other inmates kept quiet because they did not want to risk being sent to the "hole," or other repercussions resulting from the "snitch factor."

[*P84] As stated earlier in this opinion, force is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." This Court has noted that the use of the word "any" in the statutory definition of force indicates that the degree of force necessary to commit a sex offense may vary situationally. See, e.g., *State v. Clark*, Cuyahoga App. No. 90148, 2008 Ohio 3358.

[*P85] In *State v. Eskridge* (1988), 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304, the Ohio Supreme Court stated that "[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." (Internal citations omitted.) See, also, *State v. Riffle* (1996), 110 Ohio App.3d 554, 560, 674 N.E.2d 1214 (holding that the "amount of force necessary to commit rape is not fixed; it depends on the parties' age, size, strength, and relation to each other"); *State v. Kennedy* (holding that the victim's

"youth and vulnerability coupled with the power and dominance of an adult male in a position of authority, who had maintained a pattern of abuse * * * created a situation in which it was unnecessary for defendant to use brutal force to effect his purpose").

[*P86]  Although the *Eskridge* rule commonly applies to parent-child or other domestic situations, we extend it to the unique facts of the case at hand.  It is undisputed that defendant, who was a corrections officer, was in a position of authority over his victims, who were prisoners at the facility where defendant was employed.  The evidence is sufficient to show that defendant used or threatened psychological force to touch erogenous zones of various inmates for his sexual gratification.  For example, the act of turning around only to have a person with authority over you put his tongue in your mouth is sufficient to imply force, as legally defined.

[*P87]  The court properly denied defendant's Crim.R. 29 motion on the three GSI counts.

*Fortson*, 2010-Ohio-2337 at ¶¶76-87.

        With respect to the GSI conviction concerning one of the victims, Fortson again argues

that the force requirement was not satisfied despite the testimony that the victim was asleep at

the time of the sexual contact.  (ECF No. 9 at 24.)  As discussed above, Fortson's position is not

supported by Ohio law.  With respect to the other two GSI victims, Fortson argues that the

evidence, described above by the state appellate court, fails to satisfy the force or threat of force

requirement.  Fortson, however, fails to cite any law whatsoever to support his assertion.  (ECF

No. 9 at 24-25.)  The Court finds nothing unreasonable in the state appellate court's

determination that the force element was satisfied by Fortson's position of authority over the

victims, who were all inmates at the prison where Fortson worked as a security guard.  In

addition, there was testimony from the victims that they feared reprisals or punishment for

reporting Fortson's unwanted sexual advances.

        The state court's sufficiency determination was not uTherefore, Fortson's seventh ground

for relief is without merit.

**F.    Ground Eight: Fining an Indigent Defendant**

Fortson asserts that he was denied due process of law when the trial court imposed a $25,000 fine despite earlier finding that he was indigent.  (ECF No. 9 at 25.)  Respondent asserts that this assignment of error is procedurally defaulted because it was not raised before the Ohio Supreme Court.  (ECF No. 8 at 32-34.)  Respondent's contention is factually inaccurate as illustrated by Fortson's Memorandum in Support of Jurisdiction filed with the Ohio Supreme Court and attached to Respondent's Answer/Return of Writ as Exhibit 10.  (ECF No. 8-1.)  Therein, Fortson clearly and unequivocally made the same argument he now raises.  Therefore, this ground for relief is not procedurally defaulted.

This issue was not well briefed by either party.  Respondent asserts that Fortson's claim is not cognizable.  However, Respondent's reliance on the Supreme Court decision in *Maleng v. Cook*, 490 U.S. 488 (1989) is misplaced.  The *Maleng* decision merely stands for the proposition that only a person "in custody" may be eligible for habeas relief.  Respondent's additional reliance on a Third Circuit decision, *Obado v. New Jersey*, 328 F.3d 716 (3d Cir. 2003), is similarly misplaced.  Therein, the court found that a petitioner who was *not* in custody was barred from seeking habeas relief.  In the case at bar, Fortson clearly meets the "in custody" requirement.  Nonetheless, under the AEDPA, Fortson has the burden of establishing that the state court's decision on this issue was contrary to or an involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  Fortson's "argument" is conclusory and makes no reference to any federal law supporting that

his fine was unconstitutional.[12]  It is not this Court's function to find law to support Fortson's conclusory and undeveloped  "argument."  *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citations omitted).

As such, it is recommended that Fortson's eighth ground for relief be deemed waived.

### V.  Conclusion

For the foregoing reasons, it is recommended that Fortson's Petition be DENIED.

/s/ Greg White_____
U.S. MAGISTRATE JUDGE


Date: March 27, 2012



### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

[12]  Fortson's citation to *Fiore v. White*, 531 U.S. 225 (2001) is inapposite.  That case merely reiterated the maxim that the "Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt."